Application of AIRCRAFT-MARINE PRODUCTS, INCORPORATED—by change of name, now AMP Incorporated.

Patent Appeal No. 6558.

United States Court of Customs and Patent Appeals.

July 6, 1960.

Rehearing Denied Oct. 10, 1960.

Truman S. Safford, New York City, Marshall M. Holcombe, Harrisburg, Pa. (William J. Keating, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

MARTIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board affirming the refusal of the examiner to register for "electrical connectors and terminals" a mark consisting of "an arbitrary geometrical design incorporating two juxtaposed spaced forms with their substantially straight, adjacent boundaries coextensive, and having oppositely convex outer boundaries."[1]

The goods to which the mark is applied are used in electrical installations. The connectors and terminals consist of a circular piece of metal having a bolt hole, of a size suitable to fit over posts on electrical equipment, in the center thereof so that the connector can be secured to that equipment. A portion of the circumferential extent tapers to an elongated neck, the neck having an enlarged end portion, that portion being dimensioned so that it can be folded around a conductor (wire) to completely surround the conductor. That portion, to assure its firm grip of the conductor, is flattened and a crimp made therein. A band of metal may be placed over that portion prior to flattening and crimping. A number of possible crimp designs can be used to perform the function of tightly grip-

[*] United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

[1] Application serial No. 696,857, filed October 21, 1955. First use in commerce is alleged to be on or about March 11, 1943.

ping the wire. It is one of those designs which appellant selected and seeks to have registered on the principal register as its trademark.

That crimp appears, on each side of the folded portion of the metal piece, as two depressions transverse to the longitudinal dimension of the wire. The depressions are each in the shape of a "D," the two depressions on each side being back to back with a narrow ridge of metal separating the adjacent flat sides of the "D's." The crimping tool which impresses the alleged "trademark" on the terminals and connectors is also sold by the applicant to be used on its uncrimped connectors and terminals.

In its initial decision the board stated, "Actually, what is presented for registration is the shape of the indentations made by a crimping tool in attaching electrical solderless connectors and terminals to a conductor."
It found that

> " * * * applicant sells connectors and terminals and tools for (a) applying the connectors and terminals to conductors, and (b) applying applicant's [crimp] 'trademark' to such connectors and terminals" [Emphasis ours].

Because it found that "The claimed 'trademark' is put on the goods by the purchaser after delivery and during installation," the board concluded that it was not used in commerce within the meaning of the Lanham Act and hence was not registrable.

On reconsideration however, the board found that additional evidence introduced by appellant in connection with its "Request for Reconsideration" was sufficient to establish

> "that applicant, in addition to selling terminals and connectors and hand tools with which to apply them

to conductors, sells in commerce connectors which are crimped onto the wire or conductor, and that the shape of the indentations made by the crimping tool on such terminals and connectors is that which is presented for registration. This showing is sufficient to overcome the finding in the previous decision that the claimed 'trademark' is not used in commerce within the definition set forth in the statute."

Registration was then refused on other grounds.[2]

The finding that appellant sold tools with which its "trademark" could be applied to connectors and terminals by anyone possessing such tools was not vacated on reconsideration or questioned by appellant. That finding is supported by the record. The clear inference from at least one of appellant's advertisements of record is that its tools are available for use by purchasers to impress its "trademark" on terminals and connectors manufactured or sold by others.

Since the tools which make the indentations claimed to be appellant's "trademark" could be used by a purchaser of such tools on connectors and terminals procured from sources other than appellant, the alleged mark obviously cannot indicate the source of crimped connectors and terminals. Furthermore, selling those tools and allowing their use in that manner shows that applicant did not use its purported trademark "to identify [its] goods and distinguish them from those manufactured or sold by others," Lanham Act, Section 45, 15 U.S.C.A. § 1127.

Under these circumstances we conclude that this mark is not a trademark within the purview of the Lanham Act and for these reasons affirm the decision of the Trademark Trial and Appeal Board.

Affirmed.

2. The board stated:
"This record fails to show that the shape of the crimping indentations on connectors and terminals sold by applicant performs a trademark function, i. e., that it is a mark which is utilized as an identification in the purchase and sale of the goods. It is therefore unregistrable."